UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAROWA FAHMY,<br><br>                Plaintiff,<br><br>-against-<br><br>COUNTY OF SUFFOLK, New York<br><br>                Defendants. | Civil Action No. _____<br><br>**COMPLAINT AND<br>JURY DEMAND** |

Plaintiff Marowa Fahmy, by and through her attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP and the Council on American-Islamic Relations New York Inc., for her Complaint alleges as follows:

## INTRODUCTION

1. Marowa Fahmy, a practicing Muslim woman, sobbed as Suffolk County police officers forced her to remove her hijab and took her photograph. They forced her to remove her clothes, searched her body, and paraded her through police custody, in full view of multiple male officers. Through tears, Ms. Fahmy repeatedly explained that she could not be seen without her hijab. But the officers ignored her pleas. Suffolk County police officers refused to return Ms. Fahmy's religious head covering for nine hours.

2. For almost thirty years, Ms. Fahmy has covered her head and neck pursuant to her Muslim faith. Suffolk County police officers shattered her religious agency in a single arrest. Like many Muslim women whose religious beliefs dictate that they wear a hijab, Ms. Fahmy felt exposed and violated without hers—as if she were naked in a public space. Officers ignored her pleas, claiming that they were acting pursuant to "rules," and left Ms. Fahmy frantic, weeping, and uncovered.

3. Ms. Fahmy endured this trauma and anguish because of an official Suffolk County Police Department ("SCPD") policy that forces arrestees to remove their religious head coverings for photographs that are kept forever, visible to all who can access the SCPD's main database or have occasion to view an arrestee's paper file. This unnecessary and discriminatory policy is out of step with national norms, federal and state law, and the United States Constitution.

4. SCPD's policy of requiring arrestees to remove garments that substantially cover an individual's head for photographs is unlawful. This kind of substantial burden on religious practice is directly prohibited by the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"). The SCPD's policy also contravenes the First Amendment to the United States Constitution, Article I, Section 3 of the New York State Constitution, and New York State law.

5. This civil rights action seeks damages and declaratory and injunctive relief to both compensate Ms. Fahmy for the severe emotional damage she has suffered and to require the SCPD to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future.

**PARTIES**

6. Plaintiff Marowa Fahmy currently resides in East Setauket, New York.

7. Defendant County of Suffolk ("the County") is a municipality organized and existing under the laws of the State of New York and is located within the confines of the Eastern District of New York. The Suffolk County Police Department ("SCPD") is an agency of the County. At all times relevant hereto, the County was responsible for the policy, practice, supervision, implementation, and conduct of all SCPD matters and was responsible for the

appointment, training, supervision, and conduct of all SCPD personnel. In addition, at all relevant times, the County was responsible for enforcing the rules of the SCPD, and for ensuring that SCPD personnel obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This case arises under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, and the First and Fourteenth Amendments to the United States Constitution.

9. This Court has supplemental jurisdiction over the New York State law claim pursuant to 28 U.S.C. § 1367.

10. The acts complained of occurred in the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims occurred in the District.

## JURY DEMAND

11. Plaintiff demands a trial by jury in this action.

## FACTUAL ALLEGATIONS

12. This case is about an SCPD policy that violates the First Amendment as well as other federal and state law. Pursuant to this policy, SCPD officers force arrestees who wear religious head coverings to remove those head coverings for a photograph, even where doing so violates the arrestees' sincerely-held religious beliefs. This policy lacks justification and must be changed.

***The Hijab***

13. Ms. Fahmy wears a hijab pursuant to her Muslim faith. For the purposes of discussing SCPD's policy, the term "hijab" is used throughout this Complaint to refer to a garment worn by many Muslim women in various parts of the world; it is a headscarf that covers

3

the wearer's hair, ears, and neck, and frequently part of her chest, but leaves her entire face exposed. In Arabic, the word "hijab" derives from the word "hajaba," sometimes translated as to hide or screen from view or to cover. Wearing a hijab is also known as "covering." Ms. Fahmy does not wear a niqab, or a face veil.

14. For many observant Muslim women, the practice of covering entails wearing one's hijab at all times, whether at home or in public, when the wearer is in the presence of men who are not part of her immediate family ("*mahram*").

15. While women choose to wear the hijab for an array of reasons, many believe that the hijab fulfills the commandments of modesty and devotion that stem from, among other things, the *Qur'an*, the holy book of the Muslim faith, and the *hadith*, oral traditions carried down from the age of the Prophet Mohammed (S.A.W.).[1] Ms. Fahmy and other women who cover frequently view wearing the hijab as a mandatory aspect of Muslim identity and faith.

16. Ms. Fahmy wears hijab because her faith dictates that no man outside of a woman's *mahram* should see her uncovered hair, head, and neck. Ms. Fahmy has worn hijab every single day for nearly thirty years and believes that her religious faith requires her to do so. The hijab is core to Ms. Fahmy's identity. It is an essential part of who she is.

17. Being forced to remove one's hijab in public, particularly in the presence of men who do not belong to the wearer's *mahram*, is a profound defilement of the wearer's sincerely-held religious beliefs and a violation of her religious practice. Requiring a Muslim woman to remove her hijab in public is akin to demanding that a secular person strip naked in front of strangers.

---

[1] The phrase "S.A.W." is shorthand for "salla Allahu 'alayi wa salam," a phrase that translates to "God's blessings and peace be upon him" and that is frequently used to express love and respect for the Prophet.

*SCPD's Unlawful Photograph Policy*

18. Suffolk County Police Department Policy 900.5.6 governing religious accommodations states:

> Those who request to wear headscarves or simple head coverings for religious reasons should generally be accommodated absent unusual circumstances. Head coverings shall be searched before being worn. Individuals wearing headscarves or other approved coverings shall not be required to remove them while in the presence of or while visible to the opposite sex if they so desire. *Religious garments that substantially cover the individual's head and face may be temporarily removed during the taking of any photographs.* (emphasis added)

19. Under the language of the Policy, SCPD officers may require removal of a religious headscarf that substantially covers the head, like Ms. Fahmy's.

20. SCPD Policy also states:

> Subject to available resources, safety and security, the religious beliefs and needs of all individuals in custody should be reasonably accommodated. Requests for religious accommodation should generally be granted unless there is a compelling security or safety reason and denying the request is the least restrictive means available to ensure security or safety. The responsible supervisor should be advised any time a request for religious accommodation is denied

21. SCPD officers refused Ms. Fahmy's repeated pleas to keep on her religious head covering and left her uncovered for nine hours in front of male officers. SCPD officers also strip-searched Ms. Fahmy in front of a male officer.

*Federal, State, and Local Governments Across the United States Recognize the Religious Interest in the Hijab and Permit it to be Worn in Official Photographs*

22. SCPD's Policy contravenes national norms and practices. From the federal to the local level, government and law enforcement entities recognize the significant constitutional and statutory interests at play and permit those in custody to wear religious head coverings for the purpose of official photographs.

23. The United States Department of State permits those who wear hats or head coverings for religious reasons to keep those coverings on in official passport photographs. The Department of State website allows those being photographed to wear a religious hat or head covering if they "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn continuously in public."[2]

24. Similarly, the United States Citizenship and Immigration Services ("USCIS") issued a policy memorandum on July 23, 2012 that permits religious head coverings to be worn in photographs. The memorandum states that "USCIS will accommodate an individual who wears headwear as part of their religious practices."[3]

25. The New York State Department of Motor Vehicles Regulations of the Commissioner, 15 CRR-NY 3.8, "Photographic driver licenses," also permit an applicant for a driver's license to keep her hijab on while having her official driver's license photograph taken. In July 2007, officials at the Department of Motor Vehicles sent letters of reminder to offices throughout New York State regarding head coverings and their approved use in driver's license photographs.

26. Law enforcement officials across the country have likewise recognized the right of citizens to wear hijabs or other religious head coverings while being photographed for official government purposes.

---

[2] *Available at* https://travel.state.gov/content/travel/en/passports/how-apply/photos.html#:~:text=If%20you%20wear%20a%20hat%20or%20head%20covering%20for%20medical,up%20part%20of%20your%20face (last accessed December 28, 2023).

*Available at* https://www.uscis.gov/sites/default/files/document/memos/Accommodating%20Religious%20Beliefs%20PM.pdf (last accessed December 28, 2023).

6

27. The New York Police Department ("NYPD") recognized the religious harm of requiring removal of religious head coverings for booking photos and reached a settlement on October 26, 2020 pursuant to which the NYPD revised its policy to allow arrestees to retain religious head coverings for photographs with limited exceptions where specific evidence would be obscured by a head covering or a person was arrested outside of their home without a head covering.[4]

28. The Yonkers Police Department ("YPD") similarly reached a settlement in April 2021 providing that YPD would not remove arrestees' religious head, face, and body coverings for mug shots and while in custody except in very limited circumstances.

29. In Dearborn Heights, Michigan, the Police Department changed its booking procedures in July 2015 after a woman was forced to remove her hijab in the presence of men during the booking photograph and while in custody. The Police Department implemented reforms after that woman filed suit alleging violations of her religious rights. According to the updated policy, Muslim women are not required to remove religious head coverings like hijabs for any booking photograph. At least one additional lawsuit has been settled under the new policy, which recognizes the substantial religious interests of women who wear hijabs.

30. In Long Beach, California, the City Council approved a July 2017 settlement between a woman required to remove her hijab for a post-arrest photograph and the Long Beach Police Department that amended the Department's official policy so as to accommodate persons who wear religious head coverings. The Department is no longer permitted to forcibly remove the hijabs of female arrestees at any point while they are in custody.

---

[4] *Available at* https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf (last accessed December 28, 2023).

31. In amending its policy, Long Beach joined two neighboring jurisdictions, San Bernardino County and Orange County, which adopted policies protecting detainees who wear religious head coverings following lawsuits that settled in 2008 and 2013 respectively.

32. In Hennepin County, Minnesota—the county that includes Minneapolis—the Sheriff's Office implemented a new policy for inmates at the Hennepin County Jail and those in custody throughout Hennepin County in March 2014. The policy permits female arrestees to keep their hijabs on while a booking photograph is taken and provides that the hijab can be pushed back slightly off of the wearer's face if necessary. Inmates at the County Jail are permitted to wear hijabs while incarcerated.

33. In Portland, Maine, Cumberland County Sheriff Kevin Joyce publicly apologized after releasing the booking photographs of two Muslim women who had been arrested at a Black Lives Matter protest. The photographs showed each woman without her hijab; Joyce offered his "sincerest apologies . . . to the Muslim community for the appearance that we are disrespecting their religious beliefs and practices."[5] The Cumberland County Jail procedures require a woman to remove her hijab only in private, without men present, and provide that two booking photographs will be taken, one with the woman's hijab and another without.

34. Each of these examples reflects a growing national consensus that there is no basis to require the removal of religious head coverings for official government photographs.

***The SCPD Forced Ms. Fahmy to Remove Her Hijab and Remain Uncovered for Nine Hours***

35. Ms. Fahmy was arrested based on a false domestic complaint by her 16-year-old son on October 9, 2022.

---

[5] *Available at* https://www.pressherald.com/2016/09/14/sheriffs-office-apologizes-for-improperly-releasing-photos-of-muslim-protesters/ (last accessed March 4, 2018).

8

36. The arresting officers took Ms. Fahmy to the Suffolk County Police Department Sixth Precinct. Ms. Fahmy asked to be taken to the hospital because she was feeling heart and stomach pains. The officers took Ms. Fahmy to the hospital where she received medication and returned to the precinct.

37. Ms. Fahmy was then transported to a jail for women where a female officer escorted Ms. Fahmy to an office where she performed a physical search by touching Ms. Fahmy's body while a male officer watched.

38. The officer forced Ms. Fahmy to remove the outer layer of her hijab, exposing a small, fitted scarf underneath. Ms. Fahmy pleaded that as a Muslim, she could not expose her hair, especially in front of a male officer. The officer refused to accommodate Ms. Fahmy's religious beliefs and forced her to remove both layers of her hijab, exposing her hair and neck.

39. Ms. Fahmy began to cry, insisting that as a Muslim woman, she needed her hijab and could not stay without her hijab. The officer refused to allow Ms. Fahmy to cover herself and confiscated her hijab.

40. Ms. Fahmy sat in the jail, uncovered and sobbing for the next several hours.

41. Later, two male officers approached her cell to escort her to a different location. Ms. Fahmy again explained that she was a Muslim woman and could not go outside without her hijab. The officers refused to allow Ms. Fahmy to cover herself and took her to another police station.

42. At the police station, SCPD officers escorted Ms. Fahmy to an office where another two male officers were waiting to take an uncovered photograph of Ms. Fahmy, who continued to sob uncontrollably, pleading for her hijab. The officers refused and took a photo of Ms. Fahmy with her hair and neck exposed.

43. SCPD officers then transported Ms. Fahmy back to the women's jail where a female officer instructed her to remove her clothes in front of a male officer. Ms. Fahmy again refused, insisting that she was Muslim and could not expose her body to unknown men.

44. The officer again ignored Ms. Fahmy's religious mandates and forced her to remove her jacket and dress, leaving her in pants and a sleeveless, see-through shirt, with her breasts visible. The officer pulled the waistband of her pants to look inside and searched under her bra, while a male officer watched.

45. Ms. Fahmy continued to cry, as the extent of her exposure and humiliation became unbearable.

46. Ms. Fahmy picked up her clothes off the ground and was guided to another room to get dressed, still without her hijab. Again, she begged an SCPD officer for her hijab, refusing to leave the room exposed because doing so would violate her religion.

47. The officer conveyed Ms. Fahmy's request to another officer who refused to return Ms. Fahmy's hijab.

48. SCPD officers then transported Ms. Fahmy by car to the courthouse. Ms. Fahmy was paraded down a hallway before seven or eight men, uncovered and exposed. Finally, after nine hours of violating Ms. Fahmy's religious rights, SCPD officers returned her hijab.

***Ms. Fahmy Suffered and Continues to Suffer Emotional and Physical Harm from the SCPD's Treatment***

49. Ms. Fahmy is deeply traumatized from what she experienced in SCPD custody. Every time she remembers what happened to her, her heart rate accelerates, she cannot breathe, and she begins to cry.

50. Ms. Fahmy also suffers marks and bruising on his wrists from the tight handcuffs.

***The SCPD Violated Ms. Fahmy's Religious Rights***

51. The First Amendment prohibits unreasonable interference with the religious rights of individuals.

52. Federal legislation has been enacted to further demonstrate the robust national commitment to the free exercise of religion and to prohibit the government from placing a substantial burden on religious beliefs. This legislation, which reflects an increased awareness of and support for religious interests in practices like prayer and religiously compliant meals, "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by . . . the Constitution." 42 U.S.C. § 2000cc-3(g). The statute even "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." *Id*. § 2000cc-3(c).

53. In contravention of this longstanding legislation and the tolerant, inclusive policies it embodies, SCPD officers repeatedly refused to accommodate Ms. Fahmy's religious practice while she was in custody.

54. The County either knew or should have known that the SCPD officers were likely to engage in the unlawful interference of religious rights.

***Ms. Fahmy Timely Filed a Notice of Claim***

55. Within ninety days after Ms. Fahmy's October 9, 2022 arrest, counsel for Ms. Fahmy filed a Notice of Claim with the Suffolk County Attorney's Office.

56. Ms. Fahmy attended and testified at the hearing required under Section 50-H of the General Municipal Law on March 23, 2023.

57. This action was commenced within one year and ninety days after the happening of the event upon which the claim is based.

## FIRST CAUSE OF ACTION
### The Religious Land Use and Institutionalized Persons Act
**(42 U.S.C. § 2000cc)**

58. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

59. RLUIPA provides, in relevant part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

60. Plaintiff is a "person[]" as defined under the RLUIPA. *See* 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997(3).

61. Plaintiff's decision to wear hijab constitutes a sincerely-held religious belief.

62. At all relevant times, Defendant met the definition of the term "government" under the RLUIPA. *See* 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

63. At all relevant times, Plaintiff was in SCPD custody. The locations where Plaintiff was detained including, but not limited to SCPD Sixth Precinct, 400 Middle Country Rd, Selden, NY 11784, the women's jail, and courthouse respectively (the "County Institutions"), where the events alleged in the complaint transpired, are federally-funded "institutions" as defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

64. At all relevant times, Plaintiff was "residing in or confined to institutions" as defined under the RLUIPA when the events alleged above transpired.

12

65. Defendant's acts or omissions, policies, and customs substantially burdened Plaintiff's religious exercise by requiring her to remove her hijab to be photographed while she was residing in or confined to County Institutions.

66. Defendant's acts or omissions, policies, and customs do not further a compelling government interest.

67. Defendant's acts or omissions, policies, and customs are not the least-restrictive means of furthering a compelling government interest.

68. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

69. Plaintiff has a reasonable expectation that she will be subjected to Defendant's policy in the event that she is subsequently arrested.

## SECOND CAUSE OF ACTION
### Free Exercise Clause
### (42 U.S.C. § 1983)

70. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

71. 42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

72. At all relevant times, Defendant acted under color of state law.

73. Under the First Amendment to the Constitution of the United States of America, Plaintiff has the right to freely exercise her religion.

74. By forcing Plaintiff to remove her hijab for a photograph and throughout SCPD custody, Defendant deprived Plaintiff of her right to freely exercise her religion in contravention of the Free Exercise Clause.

75. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has sustained damages and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

76. The foregoing violations of Plaintiff's First Amendment constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to Defendant County, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are arrested by the SCPD.

77. Defendant failed to provide adequate training or supervision to subordinate officers to such an extent that it amounts to deliberate indifference to the religious rights of persons, including Plaintiff, who come in contact with SCPD officers.

## THIRD CAUSE OF ACTION
### New York State Constitution, Article I, Section 3

78. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

79. Article I, Section 3 of the Constitution of the State of New York provides that: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind." McKinney's Const. Art. 1, § 3.

80. Defendant's policy requiring arrestees to remove religious head coverings to be photographed violates Article I, Section 3 by disallowing the free exercise of religion.

81. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## FOURTH CAUSE OF ACTION
### Negligent Training and Supervision Under New York Law

82. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

83. By virtue of the foregoing, Defendant is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately supervise its officers employed by the SCPD with regard to the aforementioned constitutional and statutory duties to arrestees in their custody.

WHEREFORE, Plaintiff Marowa Fahmy respectfully request judgment against Defendant as follows:

a) Awarding such damages to Plaintiff as will fully compensate her for her loss of rights and emotional distress suffered due to Defendant's unlawful conduct;

b) Declaring that Defendant's discriminatory practices violate the RLUIPA, 42 U.S.C. § 2000cc *et seq*.; the Free Exercise Clause of the First Amendment to the United States Constitution; and Article 1, Section 3 of the New York State Constitution;

c) Declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02;

d) Requiring Defendant to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future;

e) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

f) Granting Plaintiff such other further relief as may be just and proper.

Dated: New York, New York
January 8, 2024

        EMERY CELLI BRINCKERHOFF
        ABADY WARD & MAAZEL LLP

        By: _____/s/_____
            O. Andrew F. Wilson
            Sana Mayat
            600 Fifth Avenue, 10th Floor
            New York, New York 10020
            (212) 763-5000

        COUNCIL ON AMERICAN-ISLAMIC
        RELATIONS NEW YORK, INC.

            Lamya Agarwala*
            Brendan "Burhan" Carroll*
            80 Broad St, New York, NY 10004
            (646) 665-7599

        *Attorneys for Marowa Fahmy*

        *Pro hac vice applications forthcoming